El Juez Asociado Señor Pérez Pimentel concurre en el resultado.

Manuel Pérez Soto, sustituído por sus herederos José A. Pérez y Otros, demandantes y apelantes, *v.* Maryland Casualty Co. y Félix Vale Soto, demandados y apelados.

Número 11303.

*Sometido:* 2 de mayo de 1955. *Resuelto:* 30 de junio de 1955.

476

*Eduardo Pérez Casalduc,* abogado de los apelantes; *Charles R. Hartzell, Rafael O. Fernández, P. Juvenal Rosa, José L. Navas, Daniel F. Kelly, Jr.,* y *Vicente M. Ydrach,* abogados de los apelados.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del Tribunal.

El presente es un pleito de daños y perjuicios instado por los herederos de Manuel Pérez Soto contra la Maryland Casualty Company y Félix Vale Soto. Pérez Soto murió a consecuencias de lesiones que recibiera al ser arrollado en 1949 por una camioneta de campaña propiedad del Gobierno de Puerto Rico y manejada por Vale Soto en el cumplimiento de sus obligaciones como policía. Celebrado el juicio en los méritos, el Tribunal Superior dictó sentencia a favor de los demandantes y contra Vale Soto en la suma de $9,160, más $500 para honorarios de abogado, pero declaró sin lugar la demanda en cuanto a la Maryland Casualty Company. Los demandantes han apelado de aquella parte de la sentencia que declaró sin lugar la demanda en cuanto a la compañía aseguradora.

La transcripción de evidencia no fué radicada ante este Tribunal. De los autos sólo aparece la demanda enmendada, radicada en 1953, la contestación, las conclusiones de hechos y de derecho y la sentencia del tribunal sentenciador, la póliza de seguros aquí envuelta, y la resolución declarando sin lugar la moción de reconsideración. Si bien la demanda original no está en autos, de las conclusiones de hechos del tribunal sentenciador es evidente que la demanda original fué radicada antes de 1952 y que incluía como demandada a la compañía aseguradora pero no al asegurado—"Gobierno Insular de Puerto Rico". ([1])

■■ De conformidad con el art. 175 de la Ley de Seguros, según fué enmendada por la Ley núm. 19, Leyes de Puerto Rico, 1929, antes de 1952 un asegurador podía ser demandado en dos formas solamente: (1) por demanda contra el asegurador únicamente luego de haber el demandante obtenido sentencia final contra el asegurado; o (2) incluyendo al asegurado y a la compañía de seguros en la misma demanda. Toda vez que los demandantes no obtuvieron primeramente sentencia final contra el asegurado ni incluyeron al Gobierno de Puerto Rico y a la aseguradora en la demanda original, ésta no aducía una causa de acción contra la aseguradora cuando fué radicada antes de 1952. *United States Casualty Co.* v. *Corte*, 66 D.P.R. 937, 939.

■ Sin embargo, el tribunal sentenciador nunca pasó sobre la moción de la compañía aseguradora para desestimar la demanda original. Y después la Ley núm. 60, Leyes de Puerto Rico, 1952, enmendó el art. 175 para que dispusiera que podía radicarse la demanda contra la compañía aseguradora únicamente. ([2]) Surge por consiguiente la cuestión

---

([1]) No se levantó cuestión alguna de prescripción en lo que respecta a la aseguradora, ya que ésta era demandada en la demanda original que aparentemente fué radicada dentro del año de la fecha del accidente. *Bithorn* v. *Santana*, 68 D.P.R. 300, 305.

([2]) El art. 1 de la Ley núm. 60 de 1952, 26 L.P.R.A. sec. 1074, que enmendó el art. 175, prescribe como sigue:

"Artículo 1.—Por la presente se enmienda la Sección 175 de la Ley

de si bajo el art. 175, según fué enmendado en 1952, la demanda enmendada radicada en 1953 contra Vale Soto y la compañía aseguradora aduce una causa de acción contra ésta, no empece el dejarse de incluir al "Gobierno Insular de Puerto Rico" como asegurado.

El tribunal sentenciador resolvió que la enmienda de 1952 no autorizaba a los demandantes a radicar una demanda enmendada en 1953 contra la aseguradora sin incluir al asegurado. Su teoría fué que dicha enmienda no era una medida meramente procesal; más. bien, según el tribunal sentenciador, dicha enmienda creó una causa de acción contra la aseguradora que no existía antes; en su consecuencia, no se podía aplicar retroactivamente a un accidente que ocurrió en 1949.

No podemos convenir con el razonamiento del Tribunal Superior al efecto de que la enmienda de 1952 del art. 175 creó una causa de acción contra la aseguradora que no existía antes. Durante muchos años antes de 1952 el art. 175 permitía a un demandante radicar demanda conjuntamente contra el asegurado y la compañía aseguradora. Hemos dicho que el art. 175, según disponía antes de 1952, ". . . es un medio puramente procesal para evitar dos pleitos; *que no crea derecho sustantivo alguno;* que no procede un pleito contra la compañía de seguros únicamente; y que una condición previa a la responsabilidad de la compañía es que se resuelva que el ase-

---

Núm. 66 aprobada en julio 6 de 1921 conocida por 'Ley de Seguros de Puerto Rico', según ha sido enmendada, para que lea como sigue:

" 'Sección 175.—Será ilegal toda cláusula en un contrato de seguro que impida al asegurado el derecho de reclamar en los tribunales de justicia, en cualquier momento después de ocurrido el accidente, contra el cual se hizo el seguro, el importe de cualquier pérdida sufrida y que hubiere sido objeto de dicho seguro. Cuando el causante de los daños estuviere asegurado contra el accidente que produjo la pérdida o los daños y en el caso en que una póliza de seguro se hubiere expedido para beneficiar a un tercero, la acción para reclamar la indemnización que proceda, podrá presentarse *contra la compañía aseguradora únicamente* o conjuntamente contra el asegurado y la compañía aseguradora. El tribunal determinará no sólo la responsabilidad de la compañía, sino también el alcance de la pérdida.' " (Bastardillas nuestras).

gurado es responsable." *Autoridad de Fuentes Fluviales* v. *Irizarry*, 72 D.P.R. 644, 650. (Bastardillas nuestras).

El caso de *Irizarry* demostraba gráficamente la naturaleza poco equitativa de la disposición del art. 175 al efecto de que era necesario el pleito contra el asegurado y el asegurador conjuntamente en aquellos casos en que el asegurado no podía ser emplazado en Puerto Rico o no se podían embargar bienes suyos. Dijimos que (pág. 652) ". . . quizás la Legislatura debiera enmendar la sec. 175 para permitir *bajo estas circunstancias* el pleito contra las compañías aseguradoras únicamente; obviamente, el no poderse citar al demandado personalmente es una ventaja (*windfall*) para la compañía." (Bastardillas nuestras).

La Asamblea Legislativa adoptó en seguida nuestra sugerencia. El art. 1 de la Ley núm. 60 de 1952 enmendó el art. 175 insertándole la frase que hemos puesto en bastardillas al citar el art. 175 en el escolio 2. Esta enmienda le dió al demandante la alternativa de demandar a la compañía aseguradora solamente o en unión del asegurado. Obviamente, la enmienda tuvo por miras resolver el problema presentado por el caso de *Irizarry* cuando el asegurado no podía ser emplazado o sus bienes embargados, resultando con ello en que la compañía aseguradora eludiera su responsabilidad. Pero nada hay en el lenguaje de la enmienda o en su historial legislativo que sugiera que la Asamblea Legislativa quiso ir más lejos y crear, como en Luisiana, "una causa de acción separada y distinta contra el asegurador" diferente a la causa de acción contra la persona responsable del daño únicamente o en unión del asegurador.([3]) Más bien parece claro que la

---

([3]) Un estatuto de Luisiana le concede al demandante en un caso de accidente de automóvil a su opción ". . . el derecho de acción directa contra el asegurador . . .". Y la ". . . referida acción puede instituirse contra el asegurador únicamente o contra el asegurado y el asegurador, conjuntamente e *in solido*." La. Rev. Stat., Tít. 22, sec. 655. El alcance de este estatuto fué recientemente descrito en *Lumbermen's Mut. Cas. Co.* v. *Elbert*, 348 U. S. 48, 99 L. ed. 83, 85–6: ". . . los tribunales de Luisiana han distinguido entre acciones instituídas por un perjudicado contra el asegurador únicamente y aquellas instituídas ya contra la persona responsable

Asamblea Legislativa dejara inalterada la naturaleza de la responsabilidad del asegurador; todavía dependía de que se encontrara responsable al asegurado.

En vista de lo anterior, no podemos convenir con el Tribunal Superior en que la enmienda de 1952 al art. 175 creó una causa de acción contra la compañía aseguradora que no existía antes. Por el contrario, las cuestiones sustantivas de (1) la responsabilidad primaria del asegurado y (2) la responsabilidad subsidiaria del asegurador fueron dejadas intactas. La enmienda de 1952 meramente cambió el procedimiento por el cual la responsabilidad subsidiaria del asegurador, que todavía dependía de la responsabilidad del asegurado, pudiera establecerse; ahora puede determinarse demandando al asegurador únicamente. Todavía es necesario probar la negligencia del asegurado y su responsabilidad primaria aun cuando por su forma el pleito sea uno contra el asegurador únicamente.

Repetidamente hemos resuelto que los estatutos procesales se aplican retroactivamente a casos pendientes. *Fajardo* v. *Tribunal de Distrito*, 69 D.P.R. 476, 481; *Pagán* v. *Otero*, 69 D.P.R. 507, 511; véase *Pueblo* v. *Tribunal Superior*, 75 D.P.R. 535, 550. De esto surge que el cambio procesal contenido en la enmienda de 1952 al art. 175 mediante el cual

---

del daño solamente o ya en unión al asegurador. *En la primera el asegurador está impedido de interponer defensas tales como el status matrimonial de las partes, de ordinario disponibles a la persona responsable del daño. Edwards* v. *Royalty Indemnity Co.*, 182 La. 171, 161 So. 191. *De igual manera el asegurador está severamente restringido de interponer defensas técnicas basadas en los términos de la póliza, tales como falta de notificación, cuando el perjudicado radica una acción directa. Jackson* v. *State Farm Mut. Automobile Ins. Co.*, 211 La. 19, 29 So.2d 177. Si bien cualquiera de las dos clases de acción exige prueba de la negligencia de la persona responsable del daño, en la acción separada contra el asegurador el demandante debe establecer también la responsabilidad bajo la póliza. *Los tribunales de Luisiana han caracterizado el estatuto como creador de una causa de acción separada y distinta contra el asegurador, que puede ser elegida por un perjudicado en vez de su acción contra la persona responsable del daño. West* v. *Monroe Bakery*, 217 La. 189, 46 So.2d 122; *Jackson* v. *State Farm Mut. Auto. Ins. Co.* (La.) supra." (Bastardillas nuestras).

puede radicarse demanda contra el asegurador únicamente era de aplicación al presente caso, que estaba pendiente cuando empezó a regir la enmienda de 1952. *Waddill* v. *Masten*, 90 S.E. 694 (N.C., 1916). Por tanto, resolvemos que la demanda enmendada, radicada en 1953, aducía una causa de acción contra la aseguradora, no empece el hecho de que el asegurado no aparecía como demandado.

 Vale Soto no era un agente especial del Estado según dicho término se usa en el art. 1803 del Código Civil, ed. de 1930. En su consecuencia, aun cuando Vale Soto sería responsable personalmente por su negligencia mientras manejaba la camioneta en cuestión en el cumplimiento de sus obligaciones como policía, el Estado no sería responsable por ello. *Soto* v. *Luchetti*, 58 D.P.R. 713; *Peña* v. *Pueblo*, 68 D.P.R. 942. Y toda vez que la responsabilidad subsidiaria del asegurador continúa dependiendo de la responsabilidad primaria del asegurado, no empece la enmienda de 1952 al art. 175, la compañía, que no radicó alegato ante este Tribunal, concebiblemente pudo argüir que tampoco era responsable. Pero un endoso de la póliza aquí envuelta dispone que la aseguradora no hará uso de "la inmunidad" del asegurado contra reclamaciones por culpa o negligencia, a menos que el asegurado solicite de ella que interponga tal defensa. También dispone que si el asegurado es relevado de responsabilidad debido a "su inmunidad", el seguro será aplicable a funcionarios y empleados del asegurador que actúen como tales. [4]

---

[4] Este endoso dice así:

"1. La Compañía conviene en no usar, bien en el ajuste de reclamaciones o en la defensa de casos contra el asegurado, la inmunidad del asegurado contra reclamaciones por culpa o negligencia, a menos que el asegurado le pida que interponga dicha defensa.

"2. El asegurado conviene en que la renuncia de la defensa de inmunidad no sujetará a la Compañía a responsabilidad por cualquier parte de una reclamación, veredicto o sentencia en exceso de los límites de la responsabilidad prescrita en la póliza.

"3. La Compañía conviene en que si el asegurado queda relevado de responsabilidad debido a su inmunidad, bien sea por interposición de tal defensa a solicitud del asegurado o por acción voluntaria de un tribunal, el seguro aplicable a las lesiones en que se basa el pleito, hasta donde de

Como ya se ha indicado, en esta jurisdicción como cuestión de ley general la responsabilidad subsidiaria de un asegurador todavía depende de la responsabilidad primaria del asegurado, no obstante la enmienda de 1952 al art. 175. Pero no hay motivo alguno por el cual un contrato de seguros no pueda proveer una regla diferente. Eso es precisamente lo que ocurrió aquí. En virtud del endoso no hay necesidad de determinar que el asegurado es primariamente responsable; por el contrario, la aseguradora será responsable si el Estado hubiera sido responsable en ausencia de cualquier defensa de "inmunidad" contra reclamaciones de daños y perjuicios. Interpretamos el endoso como un convenio al efecto de que la aseguradora será responsable dondequiera que fuere responsable si el Estado fuere una entidad privada. Así interpretado, el endoso claramente hace a la aseguradora responsable aquí no empece el hecho de que, en vista del requisito en cuanto a agente especial, el propio Estado no pudiera ser hallado responsable en este caso.

Llegaríamos al mismo resultado si la aseguradora a solicitud del asegurado hubiera alegado la "inmunidad" de éste. El endoso provee que bajo dichas circunstancias la póliza será aplicable a los funcionarios y empleados del asegurado. Esto significaría en efecto que los empleados como Vale Soto estarían entre aquellos que constituyen "los asegurados". Y la responsabilidad subsidiaria de la aseguradora dependería entonces no de la responsabilidad primaria del "Gobierno Insular de Puerto Rico" que pagó las primas, sino de la responsabilidad primaria de aquellas personas adicionales aseguradas como funcionarios y empleados del mismo, incluyendo a Vale Soto. Y bajo los hechos de este caso, la aseguradora

otro modo hubiera estado disponible para el asegurado, se aplicará a funcionarios y empleados del asegurado en sus capacidades como tal, siempre y cuando que toda defensa que no sea la de inmunidad contra responsabilidad por culpa o negligencia que sería disponible a la compañía en pleitos contra el asegurado o contra la compañía bajo la póliza, estarán disponibles a la Compañía con respecto a tales funcionarios y empleados en pleitos contra tales funcionarios y empleados o contra la Compañía bajo la póliza."

hubiera sido responsable en vista de las conclusiones del tribunal sentenciador al efecto de que el accidente ocurrió debido a la negligencia de Vale Soto. Esto es análogo a la situación en que se expide una póliza con cláusula colectiva que haga responsable a la aseguradora por la negligencia de cualquier persona que maneje un automóvil propiedad del asegurado con permiso de éste. Nuestro derecho sustantivo no hace responsable al dueño de un automóvil por la negligencia de un tercero meramente porque éste maneje el vehículo con el consentimiento del dueño. *Díaz* v. *Iturregui*, 72 D.P.R. 200. Pero nada hay que impida a las partes convenir en un contrato de seguros bajo el cual la aseguradora se hace ella misma responsable por la conducta negligente de un tercero que maneje un automóvil con el consentimiento del dueño, que paga las primas por tal póliza. Aquí otra vez el tercero en efecto se convierte en una persona adicional asegurada y la responsabilidad subsidiaria de la compañía aseguradora, aun cuando se le demande sola, depende de que se determine que dicho tercero como una persona adicional asegurada—pero no el dueño que como asegurado pagó la prima—es primariamente responsable.

La sentencia del Tribunal Superior, en tanto en cuanto declaró sin lugar la demanda contra la compañía aseguradora, será revocada, y se dictará nueva sentencia al efecto de que tanto la compañía aseguradora como Vale Soto son responsables por los daños y perjuicios ascendentes a $9,160, más $500 para honorarios de abogado y las costas.([5])

---

([5]) Vale Soto nunca compareció ante el tribunal sentenciador y no apeló de la sentencia en su contra.